United States District Court
Southern District of Texas
**ENTERED**
November 19, 2015
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| APP-AMERICA TRADE & SHIP REPAIR, INC., § § | | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-15-1603 |
| HELLENIC MARINE, LLC, | § § | |
| Defendant. | § | |

------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| HELLENIC MARINE, LLC, | § | |
| Plaintiff, | § § § | |
| v. | § § | |
| DPDS ROWAN RESOLUTE, *in rem*, HYUNDAI HEAVY INDUSTRIES, CO. LTD., PHILLIP LEE, ROWAN RESOLUTE LUXEMBOURG, SARL, | § § § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

These consolidated cases are before the Court on the Motion to Dismiss [Doc. # 23] filed by Defendant Hyundai Heavy Industries, Co. Ltd. ("HHI"), to which Plaintiff Hellenic Marine, LLC ("Hellenic") filed a Response [Doc. # 30], and HHI filed a Reply [Doc. # 32]. The Court discussed the pending motion with counsel at a pretrial conference on November 4, 2015, and allowed the parties to file

supplemental briefing. *See* Hearing Minutes and Order [Doc. # 35]. Hellenic filed its Supplemental Memorandum Response [Doc. # 37], and HHI filed its Supplemental Memorandum Reply [Doc. # 38].

The Court has reviewed the full record, including the parties' supplemental briefing. Based on this review and the application of relevant legal authorities, the Court **grants** the Motion to Dismiss as to the breach of contract and antitrust claims and **denies** the Motion as to the fraudulent inducement claim.

## I.     BACKGROUND

APP-America Trade & Ship Repair, Inc. entered into a Repair Service Agreement with South Korean shipbuilder HHI (the "APP/HHI Contract"), to perform repair and maintenance services on a fleet of vessels, including the ROWAN RESOLUTE, constructed by HHI. On October 6, 2014, APP America Ship Repair, Inc.[1] and Hellenic entered into a contract for Hellenic to perform repair work on the ROWAN RESOLUTE. APP filed a lawsuit alleging that Hellenic failed to provide an electrician to perform the repair work covered by the contract with Hellenic.

---

[1] APP America Ship Repair, Inc. was registered as an assumed name of APP-America Trade & Ship Repair, Inc. in April 2015 with the Texas Secretary of State and in August 2015 in Harris County, Texas. As a result, the Court will refer to both companies as "APP" throughout this Memorandum and Order unless the distinction between the two is material to the issue being discussed.

In a separate lawsuit, Hellenic sued HHI and others, alleging that it had not been paid for the repair services it provided on the ROWAN RESOLUTE.[2] As against Defendant HHI, Hellenic asserts breach of contract, antitrust, and fraudulent inducement causes of action. HHI moved to dismiss Hellenic's claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Motion to Dismiss has been fully briefed and is now ripe for decision.

## II. STANDARD FOR MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). The complaint must be liberally construed in favor of the plaintiff, and all well-pleaded facts in the complaint must be taken as true. *Harrington*, 563 F.3d at 147. The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Additionally, regardless of how well-pleaded the

---

[2] The two lawsuits have been consolidated as Civil Action No. H-15-cv-1603.

factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

## III. ANALYSIS

### A. Breach of Contract

Hellenic asserts a breach of contract claim under maritime law. Specifically, Hellenic alleges that HHI breached a contract with Hellenic by failing to pay for the repair services Hellenic provided for the ROWAN RESOLUTE. The core principles of Texas contract law are consistent with the general maritime law with respect to a breach of contract claim. *See Oceaneering Int'l, Inc. v. Cross Logistics, Inc.*, 2014 WL 2462810, *29 (S.D. Tex. June 2, 2014). The elements of a breach of contract claim are (1) the existence of a valid contract between the parties; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *See CCC Group, Inc. v. S. Cent. Cement, Ltd.*, 450 S.W.3d 191, 196 (Tex. App. -- Houston [1st Dist.] 2014, no pet.).

Hellenic concedes that it does not have a written or other express contract with HHI. *See* Plaintiff's Supplemental Memorandum [Doc. # 37], p. 2. Instead, Hellenic now argues that it entered into an implied-in-fact contract with HHI. The difference

between express contracts and those implied in fact is "in the character and manner of proof required to establish them." *See Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 744 (5th Cir. June 16, 2015) (quoting *Plotkin v. Jockel*, 304 S.W.3d 455, 476-77 (Tex. App. -- Houston [1st Dist.] 2009, pet. denied)). For an implied-in-fact contract to exist, there must be, *inter alia*, a meeting of the minds and each party's consent to the terms of the contract. *See id.*

The allegations and the documents on which Hellenic relies refute the existence of an implied-in-fact contract between HHI and Hellenic. HHI entered into a contract with APP for warranty repair work on HHI vessels, including the ROWAN RESOLUTE.[3] APP then entered into a contract for Hellenic to perform specific, identified aspects of the warranty repair work on the ROWAN RESOLUTE. Hellenic emailed its "offer prices" for the work to APP, not to HHI.

In its Supplemental Memorandum, Hellenic seeks to add allegations that engineering drawings that were provided for use in performing the repair work "bore the logotype of Hyundai Heavy Industries Co. Ltd." *See* Plaintiff's Supplemental Memorandum, at 5. Hellenic seeks to add allegations that APP and HHI were "collaborating" to have the repair work performed on the ROWAN RESOLUTE, and

---

[3]    The ROWAN RESOLUTE was constructed by HHI but, at all relevant times, was not owned by HHI.

that the post-delivery warranty work Hellenic performed pursuant to its contract with APP benefitted HHI, the builder of the vessel. There are no allegations, however, of any conduct by HHI prior to the beginning of the repair work on the vessel that was undertaken other than when the HHI representative was present with an APP representative. Additionally, none of the factual allegations in the Complaint and in Hellenic's Supplemental Memorandum, including Hellenic's possession of engineering drawings with an HHI logo, suggest conduct by HHI demonstrating a meeting of the minds or HHI's consent to any contractual arrangement between HHI and Hellenic.

Plaintiff also seeks to add allegations regarding events that occurred after the repair work was completed. Specifically, Plaintiff seeks to add an allegation that the ROWAN RESOLUTE's principal engineer signed a letter to Hellenic confirming the work performed by Hellenic employees on the vessel, and sent a copy of the letter to HHI. Plaintiff asserts in the Supplemental Memorandum that the principal engineer on the ROWAN RESOLUTE also approved time sheets of Hellenic's employees. After the work was performed, Hellenic sent its invoice to APP, not to HHI. This is consistent with Hellenic's allegation that HHI's representative advised Hellenic before the repair work was performed that HHI would pay APP, and that APP would pay Hellenic. *See* Supplemental Memorandum, p. 6. Plaintiff alleges that APP's

representative visited Hellenic's offices and paid $10,000.00 in cash, representing that HHI would pay the balance. There is no allegation that any HHI representative was present for this meeting. None of the allegations regarding post-work events provide a factual basis for the existence of an implied-in-fact contract between HHI and Hellenic.

In conclusion, the allegations and exhibits to the Complaint, and the proposed allegations set forth in Plaintiff's Supplemental Memorandum, demonstrate that Hellenic entered into a contract with APP to perform specific repair work on an HHI-constructed vessel, and that the invoices for the repair work were to be paid by APP. There are no allegations that suggest HHI -- having already entered into an express written contract with APP for the repair work -- intended to enter into an implied-in-fact contract with Hellenic for that same work. HHI's independent obligation to provide post-delivery warranty work on its vessels, and its contract with APP to fulfill those obligations, do not constitute conduct by HHI that indicates an intent to enter into an implied-in-fact contract with Hellenic.

Hellenic has failed to allege a factual basis for the existence of a valid, enforceable implied-in-fact contract with HHI. As a result, the Motion to Dismiss the breach of contract claim against HHI is granted.

## B. <u>Antitrust</u>

Hellenic alleges in its Complaint that the APP/HHI Contract violates § 1 of the Sherman Act, 15 U.S.C. § 1. *See* Complaint, ¶ 88, ¶ 100. "The purpose of the Sherman Act is to prohibit monopolies, contracts and combinations which probably would unduly interfere with the free exercise of their rights by those engaged, or who wish to engage, in trade and commerce -- in a word to preserve the right of freedom to trade." *U.S. v. Colgate & Co.*, 250 U.S. 300, 307 (1919).

In its Supplemental Memorandum, Plaintiff abandons its § 1 claim and seeks to assert an antitrust claim under § 2 of the Sherman Act for attempted monopolization. *See* Hellenic's Supplemental Memorandum, p. 14. Unlike the supplemental briefing on the breach of contract claim, Hellenic offers no proposed amended allegations to support the antitrust claim. Instead, Hellenic argues that the absence of a legitimate reason for HHI to enter into the Repair Service Agreement with APP states an antitrust claim under § 2. The Court finds this argument unpersuasive.

In order to allege an attempted monopolization claim under § 2, Hellenic must allege that HHI (1) "has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). A

plaintiff must allege a dangerous probability that the defendant would "monopolize a particular market and [had] specific intent to monopolize." *Id.* at 459. A plaintiff must allege that the defendant had a "legally significant share of the market" in order to establish attempted monopolization under § 2 of the Sherman Act. *See Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 490 (5th Cir. 1984).

Hellenic appears to allege that HHI engaged in predatory or anticompetitive conduct when it contracted for APP to perform repair work on HHI-constructed vessels in the Gulf of Mexico without a legitimate business reason for doing so. Specifically, Hellenic argues that APP was not capable of performing the actual repair work on the HHI-constructed vessels. "In the absence of any purpose to create or maintain a monopoly, the [Sherman Act] does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal . . .." *Colgate*, 250 U.S. at 307. Hellenic cites no legal authority supporting the argument that entering into a contract that others, or at least Hellenic, may perceive as being without a legitimate business purposes is predatory or anticompetitive. Nor does Hellenic allege a factual basis for the suggestion that HHI intended through the APP/HHI Contract to monopolize.

Additionally, Hellenic has failed to identify the market on which it relies for its § 2 claim. Absent an identified market, there can be no determination whether there is a dangerous probability of achieving monopoly power in that market. *See Aviation Specialties, Inc. v. United Technologies Corp.*, 568 F.2d 1186, 1192 (5th Cir. 1978). At the pretrial conference, Hellenic argued that the relevant market is after-delivery warranty repair work on newly constructed drilling vessels operating in the Gulf of Mexico, but Hellenic does not so allege in its Complaint or in the Supplemental Memorandum. Accepting counsel's assertion at the pretrial conference that this is the relevant market, the Court notes that Hellenic alleges that approximately 26% of the newly constructed drilling vessels operating in the Gulf of Mexico were constructed by HHI. Therefore, it is logical to infer that approximately 74% of the after-delivery warranty repair work on newly constructed drilling vessels operating in the Gulf of Mexico is controlled by other shipbuilders and would not be affected by the APP/HHI Contract. Moreover, Hellenic fails to allege that it – or any other repair company – has been excluded from performing warranty repair work on HHI vessels or was forced to make lower bids than it would otherwise have offered. From these allegations, there appears to be no dangerous probability of HHI achieving monopoly power in the identified market.

Hellenic has failed to allege factually that HHI engaged in predatory or anticompetitive conduct, that HHI had an intent to monopolize the after-delivery warranty repair work on newly constructed drilling vessels operating in the Gulf of Mexico, or that there was a dangerous probability that HHI would achieve monopoly power in that market. As a result, Hellenic fails to state a claim under § 2 of the Sherman Act, and no amendment to add a claim under § 2 of the Sherman Act will be permitted.

### C. <u>Fraudulent Inducement</u>

The elements of a fraudulent inducement claim are (1) the defendant made a false material misrepresentation knowing that it was false when made or without knowledge of its truth or falsity, (2) the defendant intended the plaintiff to act based on the misrepresentation, (3) the plaintiff acted in reliance on the misrepresentation, and (4) the misrepresentation caused injury to the plaintiff. See *Anglo-Dutch Petroleum Int'l, Inc. v. Case Funding Network, LP*, 441 S.W.3d 612, 627 (Tex. App. - Houston [1st Dist.] 2014, pet. denied) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).

In this case, Hellenic alleges that HHI, through its Assistant Manager C.H. Lim, misrepresented APP America Ship Repair, Inc.'s "reliability as a contracting party of proven ability" and that HHI had a relationship and experience with APP America

Ship Repair, Inc. "as an accredited and approved representative of HHI" for purposes of HHI's shipbuilders' warranty repair work. *See* Verified Complaint [Doc. # 1 in Civil Action No. H-15-cv-1949], ¶ 104. Hellenic alleges that the representations were false because, at the time the statements were made, APP America Ship Repair, Inc. did not exist as a corporate entity or as a registered assumed name for APP-America Trade & Ship Repair, Inc. Hellenic alleges further that the false statements were made for the purpose of inducing Hellenic to enter into the contract with APP America Ship Repair, Inc. to perform repair services for the ROWAN RESOLUTE. Hellenic alleges that it relied on the misrepresentations of HHI, through Lim, and entered into the repair contract "believing it was dealing with a genuine corporate entity engaged in the ship repair business" with the "express approval and endorsement of HHI" standing behind APP America Ship Repair, Inc. as an accredited and approved representative of HHI. *See id.*, ¶ 105. Hellenic alleges that, as a result, it suffered damages in the amount of $42,340.00 in unpaid invoices. *See id.*, ¶ 109. These allegations, while sparse, are adequate to state a fraudulent inducement claim against HHI for present purposes. The Motion to Dismiss the fraudulent inducement claim is denied.

## IV.     CONCLUSION AND ORDER

Hellenic has failed to allege a factual basis for its breach of contract and antitrust claims against HHI, but has adequately alleged a fraudulent inducement claim.  As a result, it is hereby

**ORDERED** that HHI's Motion to Dismiss [Doc. # 23] is **GRANTED** as to the breach of contract and antitrust claims and **DENIED** as to the fraudulent inducement claim.

SIGNED at Houston, Texas, this 19th day of **November, 2015**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE